# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN R. CHARTKOFF,

    Plaintiff,

v.

    Case No. 2:16-cv-1186
    CHIEF JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Elizabeth P. Deavers

AMERICAN ELECTRIC POWER,
*et al.*,

    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's, American Electric Power System Long Term Disability Plan ("AEP"), and Plaintiff's, John Charkoff ("Plaintiff"), Cross Motions for Judgment on the Administrative Record (ECF Nos. 21, 23), Memorandums in Opposition (ECF Nos. 27, 28), Defendant's Motion to Strike (ECF No. 29), and Plaintiff's Memorandum in Opposition to the Motion to Strike. (ECF No. 30.) For the reasons that follow, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record, **DENIES** Plaintiff's Motion for Judgment on the Administrative Record, and **GRANTS** Defendant's Motion to Strike.

          **I.    BACKGROUND**

### A. Procedural Background

Plaintiff applied for long term disability benefits under the American Electric Power's Long Term Disability Benefits Plan and then supplemented the application on March 22, 2016. The Plan, through its claims Administrator, the Prudential Insurance Company of America

(the "Administrator"), denied his application on April 8, 2016. Plaintiff appealed the denial in August 2016 (R. 0027) and the denial was affirmed by the Administrator on October 26, 2016. (R. at 0305–11.) He then filed the instant action under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that he is disabled from performing the duties of his own occupation due to autism spectrum disorder and anxiety and thus is entitled to long-term disability benefits from the Plan. Now, both the Plaintiff and Defendant move for Judgment on the Administrative Record.

**B. Factual Background**

Plaintiff began employment with American Electric Power as a Senior IT Network Consultant on February 14, 2014. (Pl.'s Mot. Summ. J. at 1.) Prior to his employment at AEP, Plaintiff reported that he served in the Air National Guard from 1991 to 1993. (Pl.'s Mot. Summ. J. at 4.) He served in the Coast Guard from 1993 to 1996. (*Id.*) From 1996 to 2008 he was employed as an electrician, which overlapped in 2005 with a six month deployment to Iraq. (*Id.*) As an employee at AEP, he participated in the American Electric Power's Long Term Disability Benefits Plan (the "Plan").

The Plan provides for payment of long term disability benefits to a participant, if the participant provides proof that he or she can no longer perform the duties of his or her position. (R. at 0090.) "Disability" is defined under the Plan as follows:

> For the initial 24-month period from the date of disability, "disability" is defined as an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent you from performing your duties in your occupation with AEP.
>
> After the first 24-months following your date of disability, "disability" is defined as an injury or illness that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent you from performing the duties of any occupation for which you are reasonably qualified by your

education, training, and experience. So long as you meet the requirements of this "two year test," you will continue to be disabled.

(R. at 0305.) American Electric Power delegated its authority as the Plan Administrator to Prudential. Prudential therefore has the authority to determine benefits, construe the terms of the Plan, and decide appeals.

On June 13, 2015, Plaintiff submitted his portion of the Certificate of Disability ("COD"), noting that he suffered from chronic akathisia, painful paresthesia, and mild cognitive impairment. He identified Dr. Canale as his treating physician. (R. at 0037.) Plaintiff's last date working for AEP was June 18, 2015. (R. at 0003.) He filed a claim for disability benefits on or about November 11, 2015. (R. at 0003–007.) In support of his application, Plaintiff submitted medical records and a capacity questionnaire from Dr. Erin Canale ("Dr. Canale") and a Neurobehavioral examination completed by Dr. Jennifer Whatley ("Dr. Whatley"). On November 16, 2015, the Administrator sent Plaintiff a letter informing him that additional information was needed to make a determination as to his eligibility for long-term disability benefits. (R. at 0264–65.) The next day, the Administrator sent another letter requesting that Plaintiff complete a Treatment Questionnaire. (R. at 0267–68.) In the Treatment Questionnaire Plaintiff completed on November 29, 2015, he identified Dr. Canale and Dr. Brandemihl as his treating physicians. (R. 0078–80.) On March 22, 2016, Plaintiff submitted new medical evidence in the form of a letter from Doctor Adam Brandemihl ("Dr. Brandemihl"). (R. at 0193–95, 0244–49.) In the letter Dr. Brandemihl wrote that Plaintiff had an anxiety disorder and an autism spectrum disorder ("ASD") that, in his opinion, caused Plaintiff to have an inability to work in his occupation. (R. at 0217–18.)

3

1. **Doctors**

   a. **Doctor Erin Canale, M.D.**

On June 8, 2015, Plaintiff treated with Dr. Canale, a neurologist and one of his treating physicians.[1] (R. at 0137.) Dr. Canale recommended he look into FMLA or short-term disability leave. (R. at 0137.) On July 23, 2015, she executed her section of the COD, noting that she anticipated Plaintiff would return to work after three to six weeks. (R. at 0036.) That same day, Plaintiff reported that he "feels much, much better today" than he felt at his prior visit. (R. at 0132.)

At an August 27, 2015 appointment, Plaintiff reported to Dr. Canale that he has had a girlfriend for two months and that he feels much better when he is with her "and almost feels normal." (R. at 0017.)

   b. **Doctor Jennifer Whatley, Ph.D.**

Dr. Canale referred Plaintiff to Dr. Whatley a neuropsychologist to assess Plaintiff's "neuropsychological/emotional functioning to assist in treatment planning." (R. at 0199.) Dr. Whatley performed a neuropsychological evaluation of Plaintiff on December 10, 2015. (R. at 0197.) She noted Plaintiff gave a suboptimal performance, specifically stating that during the consultation "[Plaintiff's] current[] neuropsychological test results may be an underestimation of his true abilities" and that there was "questionable effort being exerted" during his memory testing. (R. at 0207.) She also found that "[a]lthough [Plaintiff] complains of attention and concentration difficulties as well as memory dysfunction, his performance on measures of attention and concentration fell within normal limits." (R. at 0209.) Dr. Whatley noted

---

[1] It is unclear from the record when Plaintiff began treatment with Dr. Canale. He does, however, refer to her as his treating physician in communications with his claims contact Dee Coll. (R. at 0057; 0061–73.)

4

symptoms of akathisia and that Plaintiff reported he had difficulty at work due to poor performance and mistakes due to memory loss. (R. at 0207, 0209.)

Plaintiff returned for a follow-up examination with Dr. Whatley on January 3, 2016. She once again noted Plaintiff had suboptimal effort during the exam. (R. at 0209.) Plaintiff's attention and concentration were found to be within normal limits and his memory results were variable.

### c. Doctor Adam Brandemihl, M.D.

Plaintiff began seeing Dr. Brandemihl in July 2014. (R. at 0217.) Dr. Brandemihl diagnosed Plaintiff with ASD and generalized anxiety disorder. (R. at 0217.) In a letter written for Plaintiff's long term disability application, he wrote that Plaintiff has always had ASD, "but it is mild enough to have gone unnoticed. However, even mild ASD can have severe impacts on functioning." (R. at 0217.) He opined that when Plaintiff's work "performance became an issue his anxiety and depression were exacerbated to a degree that has impacted his memory, focus and concentration. This has made it impossible for him to 'dig out of' the 'hole' he finds himself in." (R. at 0218.) Accordingly, he concluded that Plaintiff is not capable of performing his job duties currently or in the foreseeable future. (R. at 0218.) The record also contains progress notes from Dr. Brandemihl concerning Plaintiff's visits on December 15, 2015, and January 4, 2016. The Court notes that Dr. Brandemihl's handwritten notes are illegible. (R. at 0193–95.)

### d. Doctor Jeffrey Kaufman, Ph.D.

Plaintiff underwent a psychological evaluation for diagnostic clarification. (R. at 0228–232.) Dr. Kaufman noted facts he found consisted with a diagnosis of autism, including that Plaintiff had poor eye contact and rarely used non-verbal gestures during the examination. He also found Plaintiff's report that he has few friends and that he has difficulties with social

reciprocity consistent with a diagnosis of autism. His notes indicate that he spoke with Plaintiff's mother who reported that Plaintiff had no major developmental problems as a child. However, Plaintiff also reported that he was hospitalized for three weeks when he was fifteen years-old due to anxiety. He concluded Plaintiff has ASD and suffers from generalized anxiety disorder. He recommended that Plaintiff seek "accommodations at the workplace to be able to reach his full potential and excel." (R. at 0232.)

### e. File Review, Doctor Roger Odgers, Ph.D.

Prudential enlisted the services of PsyBar LLC for an independent file review by a board-certified neuropsychologist. (R. at 0285–87.) On March 8, 2016, Dr. Odgers performed a neuropsychological file review of Plaintiff's medical file. (R. at 0219–25.) Dr. Odgers reviewed the records in the file from Dr. Canale, Dr. Brandemihl, and Dr. Whatley, as well as Plaintiff's own statements, AEP's Recovery Center Log Entries, and Prudential's SOAP Notes. (R. at 221–23.) He concluded that:

> [T]here are no valid data to indicate that [Plaintiff] has cognitive dysfunction. His performance across several validity measures was consistent with suboptimal effort, and, consequently, his inconsistent performance across memory measures cannot be interpreted as valid and reliable. In addition, his performance fell within normal limits across tests that are usually felt to be good measure of the integrity of the brain . . . which would argue against organic dysfunction.

(R. at 0223.) Dr. Odgers found inconclusive whether depression and anxiety intermittently affect Plaintiff's functionality. He noted that "Dr. Brandemihl indicated that depression and anxiety were intermittent problems for [Plaintiff], and he was treated with antidepressant and antianxiety medications." (R. at 0224.) But that "there was no documentation to indicate that [Plaintiff's] depression or anxiety was of sufficient severity to cause functional problems. [Plaintiff] himself did not report depression and anxiety as causing functional limitations." (R. at 0224.) Dr. Odgers therefore concluded that Plaintiff's anxiety is treatable and not disabling. Dr. Odgers

6

found that Dr. Brandemihl provided "no supporting data" for his conclusion that that Plaintiff suffers from ASD and that the ASD is debilitating. (R. at 0224.)

### f. File Review, Doctor Kevin Hayes, M.D.

Upon receipt of Dr. Kaufman's conclusions, the Administrator referred Plaintiff's file to Dr. Hayes, a board-certified psychiatrist, for an internal file review. (R. at 0198–0201, 0319–22.) After reviewing Plaintiff's file, Dr. Hayes concluded that Plaintiff has no medically-necessary restriction and/or limitations from any psychological condition from July 13, 2015 forward. (R. at 0200.) Dr. Hayes wrote:

> [Plaintiff] has acknowledged that he had been receiving stellar reviews from his supervisor until he asked his roommate[–]a friend of the supervisor[–] to move out, and he perceived retaliation due to poor work performance reviews and being placed on a work improvement plan which was not going well. [Plaintiff] has chronic low grade anxiety which [] has been escalated by his worries about termination but it does not rise to the level of impairment. Furthermore, [Plaintiff] has been administered various instruments to assess cognition and emotional functioning and there is insufficient valid data to reflect the presence of either over the course of the claim. In fact, most validity indicators have indicated overt sub-optimal effort on the part of [Plaintiff] in his approach to the testing. Most testing also fell within the normal limits. [Minnesota Multiphasic Personality Inventory] was suggestive of a somatization [disorder] but this has not been asserted by [Plaintiff's attending physician] and [Plaintiff] fails to meet sufficient [Diagnostic and Statistical Manual of Mental Disorders] criteria to meet the clinical diagnosis. [Dr. Brandemihl] also notes that [Plaintiff's] problems with anxiety/depression have been chronic, low grade and intermittent in nature.

(R. at 0200–01.) Dr. Hayes addressed Dr. Brandemihl's conclusion specifically and found that although Dr. Brandemihl asserts Plaintiff is impaired by ASD:

> . . . data presented thus far either doesn't support such a diagnosis, or fails to demonstrate that if he has it that it is causing impairment. This is a condition that would have caused academic and social problems over the entire course of his life, but [Plaintiff] noted no developmental problems as a child, and [his] resume showed a long successful career in the military where [Plaintiff] would have had to have intact interpersonal skills on a protracted basis. Again, there is no valid/reliable data to support impairing cognitive psychological disease from the date of disability through to the current time. The SSA award notice indicates that [the SSA utilizes its] own definition in defining disability.

7

Thus Dr. Hayes' independent review of Plaintiff's file similarly mirrored Dr. Odger's earlier review of the file.

### 2. Claim Denial and Appeal

On April 8, 2016, Prudential denied Plaintiff's claim. (R. at 0291–94.) In summarizing the contents of Plaintiff's medical records, Prudential concluded that Plaintiff did not present sufficient objective medical evidence suggesting that he could not perform the duties of his own occupation. (R. at 0293.)

On October 26, 2016, Prudential upheld its denial of Plaintiff's claim. (R. at 0305–11.)

## II. STANDARD OF REVIEW

A plan administrator's denial of benefits is reviewed de novo unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006). Where an ERISA plan gives the plan administrator discretionary authority, the administrator's decision is reviewed under the arbitrary and capricious standard. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The parties agree the arbitrary and capricious standard of review is applicable here.

Review under the arbitrary and capricious standard "is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Id.*; *see also Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.").

### III. DISCUSSION

Plaintiff challenges denial of his long term disability benefits, asserting that he is disabled due to ASD and anxiety. He moves for judgment on the administrative record, asserting that the Administrator's denial was arbitrary and capricious because the Administrator: improperly cherry-picked the record, failed to explain rejection of Dr. Brandemihl's opinion, and did not conduct a psychiatric examination of its own. Defendant also moves for judgment on the administrative record. (ECF No. 21.)

**A. Examination of Medical Record**

Plaintiff contends that the Administrator cherry-picked the medical records thereby rejecting the opinions of Dr. Kaufman and Dr. Brandemihl. Engaging in a selective review of the record is inappropriate. *See Moon v. UNUM Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005) (finding denial of benefits arbitrary and capricious where the administrator relied on the only opinion contrary to the opinion suggesting disability and the relied upon opinion came from a file reviewer employed by the defendant). The Court disagrees. Rather, the record reflects the Administrator's decision is supported by substantial evidence.

Plaintiff asserts that the Administrator erred by not accepting Dr. Brandemihl's opinion and to a lesser extent, Dr. Kaufman's opinion. In a letter to the Administrator, Dr. Brandemihl wrote that Plaintiff's ASD "impairs his ability to communicate and understand his customers and employer[']s needs and goals." (R. at 0217.) As a result, Dr. Brandemihl concluded Plaintiff is disabled from performing in his employment with Defendant. (R. at 0218.) Dr. Kaufman similarly found that Plaintiff has ASD. Dr. Kaufman, however, noted that Plaintiff received "stellar reviews" at work, but feared being terminated because he kicked his roommate, a friend of his supervisor, out of his house. (R. at 0229–30.) Furthermore, Dr. Kaufman did not opine

that Plaintiff is disabled by his ASD diagnosis, but that he should seek accommodations to permit him "to reach his full potential and excel." (R. at 0232.)

Plaintiff also submitted a report by Dr. Whatley, a neuropsychologist recommended by Plaintiff's treating physician Dr. Canale. Dr. Whatley noted Plaintiff gave a suboptimal performance, specifically stating that during the consultation "[Plaintiff's] current[] neuropsychological test results may be an underestimation of his true abilities" and that there was "questionable effort being exerted" during his memory testing. (R. at 0207.) She also found that "[a]lthough [Plaintiff] complains of attention and concentration difficulties as well as memory dysfunction, his performance on measures of attention and concentration fell within normal limits." (R. at 0209.) Dr. Whatley did not discuss ASD as a possible diagnosis.

Plaintiff asserts the Administrator cherry-picked the record because he found Dr. Brandemihl's opinion, that Plaintiff is functionally limited by ASD, inconsistent with the record and not based on objective medical evidence. (Pl.'s Mot. for J. on Admin. R. at 9; R. at 0307–08.) Plaintiff also asserts that in rejecting Dr. Brandemihl's opinion, the Administrator "failed to explain its rejection of the treating doctor's opinion." (Pl.'s Mot. for J. on Admin. at 10.) "Generally, a plan administrator may not summarily reject the opinions of a beneficiary's treating provider, but must instead give reasons for adopting an alternative opinion." *Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 663 (S.D. Ohio 2015). Plan Administrators, however, have no obligation to accord special deference to the treating physician's opinions. *Id.* at 663–64 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003)).

After reviewing all of the medical records Plaintiff provided, the Administrator rejected Dr. Brandemihl's opinion that ASD renders Plaintiff disabled through an inability to interact

socially. (R. at 0307–08.) He found instead that "data presented doesn't support [an ASD] diagnosis, and fails to demonstrate that if he has it that it is causing impairment." He noted that ASD would have caused academic and social problems over the course of Plaintiff's life and looked to the record which showed Plaintiff "had no developmental problems as a child, and has had a long successful career in the military where [Plaintiff] would have had to have intact interpersonal skills on a protected basis." (R. at 0307–08.) This conclusion is similar to one of the independent physician-reviewers who noted "[t]here are no supporting data for [ASD] in the medical record, and the claimant appeared to be able to effectively communicate with his treatment providers as well as other people assisting in the processing of his disability claim. In addition, his resume showed a relatively long career in the military where he was required to extensively interact with others, which would argue against a chronic Autism Spectrum Disorder." (R. at 0224.)

Plaintiff also reported that he lives with his girlfriend, whom he has been with for over a year and that he "has lots of friends who form a support for him." (R. at 0017, 0059; 0229.) Moreover, Plaintiff's other treating physician, Dr. Canale, did not provide objective medical evidence that Plaintiff was unable to perform the duties of his occupation, and Plaintiff does not point to evidence in the record the Administrator failed to consider. While, this information does not necessarily refute a diagnosis for ASD, it reasonably supports the Administrator's finding that the record did not contain evidence of any disabling social impairment. Thus, the Administrator offered an explanation based on substantial evidence that resulted from a deliberate and principled reasoning process.

Moreover, in finding Plaintiff not disabled, the Administrator sufficiently explained his rejection of Dr. Brandemihl's opinion. He put forth evidence from the record that conflicted

with a disability determination. He also relied on other medical evidence provided by Plaintiff, including Dr. Whatley's opinion that Plaintiff over-reported his symptoms and gave "suboptimal effort" during testing. (R. at 0307); *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 169 (observing that a plan administrator's decision to rely on the medical opinion of one examining doctor over another is ordinarily not arbitrary and capricious). He also considered information within the record from Plaintiff's mother who reported Plaintiff had no major developmental problems as a child. (R. at 0307.) Together, the rejection of Dr. Brandemihl is sufficiently explained. Accordingly, his decision was not arbitrary or capricious.[2]

**B. File Review**

Plaintiff takes issue with the Defendant's decision to conduct only a file review. The Sixth Circuit has found that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) (finding a file review inadequate where the reviewer did not describe the data used to reach his conclusion). With that said, "a plan's decision to conduct a file-only review . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'" *Bennet v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008) (quoting *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006)).

Plaintiff argues that an independent physical examination is necessary in cases where mental health mental is at issue. Plaintiff looks to *Javery v. Lucent Technologies, Inc. Long Term Disability Plan for Management of LBA Employees*, 741 F.3d 686 (6th Cir. 2014) to support his argument.

---

[2] Plaintiff argues Dr. Whatley's and Dr. Canale's opinions are irrelevant because they addressed concerns about Plaintiff's memory, not ASD. (Pl.'s Mem. in Opp. at 2, ECF No. 27.) The Court finds it was not arbitrary or capricious for the Administrator to find relevant those doctors' records as their examinations are relevant to Plaintiff's claimed disability.

In *Javery*, the plan reviewers overlooked record evidence and mental health test results that were provided. *Id.* at 702. The missed records included multiple opinions that supported a finding of disability. *Id.* Thus, the court found a reliance on the file review inadequate. Here, the Administrator submitted Plaintiff's file to two different reviewers, who both came to the same conclusion. Both reviewers analyzed all of the evidence in the administrative record and specifically addressed all opinions that supported a disability finding. Indeed, Plaintiff does not assert that Dr. Odgers or Dr. Hayes missed any important record information. Upon examination of the record, both reviewers, Dr. Odgers and Dr. Hayes, concluded that the medical opinions supporting disability were contradicted by other medical evidence within the record.

Accordingly, the Administrator's reliance on the use of file reviews was not improper as the reports show the reviewers thoroughly analyzed all of the medical evidence. *See Shepherd v. Reliance Std. Life Ins. Co.*, Case No. 4:06-cv-83, U.S. Dist. LEXIS 8910, at *8 (W.D. Ky. Feb. 6, 2007) ("Reliance's use of a 'file review' does not seem improper since Dr. Hayes' evaluation suggests that he thoroughly reviewed [the plaintiff's] medical record and relied on the evidence therein to form his opinion.").

**C. Social Security Disability**

Finally, Plaintiff asserts that the Administrator gave inadequate consideration of the Plaintiff's social security disability benefits. In the context of long-term disability benefits, an award of social security disability is "certainly not binding" but is also "far from meaningless." *Calvert*, 409 F.3d at 294. As such, failure to consider a social security disability award weighs in favor of finding a plan's denial of benefits arbitrary and capricious. Plaintiff's receipt of social security disability certainly draws the Court's attention.

Here, the Administrator did not find Plaintiff disabled under the Plan although Social Security found him disabled. The Administrator correctly acknowledged that the definition of disabled used to determine who qualifies for social security benefits differs from the definition of disabled as set out under the Plan and that the Administrator is required to follow the contractual provisions of the Plan. (R. at 0308 ("Please keep in mind that not all disability programs or definitions are alike. A finding by a Governmental Agency such as Social Security that a person is disabled does not necessarily mean they qualify under the terms of their Group Insurance policy.").) In the instant matter, for example, under the Plan an individual must show that the disability requires ongoing treatment unlike the definition of disabled utilized by the Social Security Administration. (R. at 0305.) In contrast, under the Social Security definition, an individual is disabled if he or she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.

This explanation sufficiently demonstrates the Administrator's consideration of the benefits award and deliberate decision to find adversely. As an award of benefits is not binding on the Administrator, the brief explanation does not render the decision arbitrary and capricious.[3]

---

[3] In his Memorandum in Opposition to Defendant's Motion for Judgment on the Administrative Record, Plaintiff attached exhibits from an online source that looks to be the Center for Disease Control and Prevention related to diagnostic criteria for ASD. Defendant moves to strike these exhibits, asserting that the Court's review is limited to the evidence contained in the administrative record. Sixth Circuit precedent is clear that this Court may only consider evidence that was presented to the plan administrator. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998). "The only exception . . . arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* (citing *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992)). The information attached is not necessary to resolve a procedural issue.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record (ECF No. 21), **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 23), and **GRANTS** Defendant's Motion to Strike. (ECF No. 29.) The Clerk is **DIRECTED** to enter judgment for Defendant.

**IT IS SO ORDERED.**

<div style="display: flex; justify-content: space-between;">

3-27-2018
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

</div>

---

Furthermore, as the Court reviews the instant matter under the arbitrary and capricious standard, this information is not particularly helpful here. Accordingly, the Motion to Strike is **GRANTED** and the Court will disregard the attached exhibits.